Damion REEVES, Appellant,

v.

UNITED STATES, Appellee.

No. 04–CF–970.

District of Columbia Court of Appeals.

Submitted April 21, 2006.
Decided June 15, 2006.

Joseph Virgilio, appointed by the court, filed a brief for appellant.

Kenneth L. Wainstein, United States Attorney, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and David B. Goodhand and Allessio D. Evangelista, Assistant United States Attorneys, filed a brief for appellee.

Before SCHWELB, FARRELL, and RUIZ, Associate Judges.

PER CURIAM:

A jury found appellant guilty of armed assault on Hector Maldonado and Juan Reyes with the intent to rob each of them; assault on David Ramos with a dangerous weapon; three counts of possessing a firearm during commission of a violent or dangerous crime (PFCV) (i.e., the three armed assaults listed above); and related weapons offenses. The convictions arose from appellant's actions in a Chinese carry-out restaurant on August 18, 2003, when, according to evidence the jury could fairly credit, appellant successively struck Maldonado in the face with a gun while attempting to rob him, likewise struck Reyes in the head after demanding his money, and finally shot Ramos in the stomach as he tried to move away from appellant. On appeal, appellant argues primarily that the trial judge erred in refusing to dismiss before trial, on grounds of multiplicity, all but one of the charged counts of PFCV. We do not agree.

■ "Multiplicity" is the charging of a single offense in several counts. *Dunham v. District of Columbia,* 442 A.2d 121, 124 (D.C.1982). "The rule [prohibiting it] ... is a corollary of the Fifth Amendment double jeopardy clause, which 'protects against ... multiple punishments for the same offense.'" *Id.* (citations omitted). Thus "[t]he principal danger in multiplicity

is that defendant will be given multiple sentences for the same offense." 1A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 145, at 87 (1999). Appellant, of course, may not complain of having received multiple sentences (and convictions) for PFCV, as all but one of his PFCV convictions were vacated at sentencing on the government's motion. He cites, rather, another recognized vice of multiplicity, contending that the failure to dismiss all but one PFCV count before trial exposed him to a possible "psychological effect upon [the] jury by suggesting to it that [he had] committed not one but several crimes [of PFCV]." WRIGHT, § 142, at 17 (citation and quotation marks omitted).

■ Appellant, however, has not established that the three PFCV charges concerned the "same" or a "single offense," such that we can say that the trial judge abused his discretion in denying the motion. *See id.* § 145, at 87 ("discretionary with the court" whether to force the prosecution to elect among multiplicitous charges); *United States v. Phillips,* 962 F.Supp. 200, 201 (D.D.C.1997) (same). As appellant recognizes by his reliance on *Nixon v. United States,* 730 A.2d 145 (D.C. 1999), and related cases, multiplicity analysis essentially replicates the test for whether offenses merge under the Double Jeopardy Clause. *See id.* at 151–52. But offenses do not merge where they "arise out of separate acts or transactions," *Allen v. United States,* 580 A.2d 653, 657 (D.C. 1990) (citation and internal quotation marks omitted), and we find no abuse of discretion by the trial judge in concluding—essentially in forecasting, as he was required to do before trial—that appellant's successive armed assaultive acts, each while possessing a firearm, supported

separate PFCV charges.[1]

 "[A]s a general rule, where two predicate armed offenses do not merge, a defendant may be convicted of separate counts of PFCV relating to each offense; that is, as to each 'crime of violence or dangerous crime.'" *Stevenson v. United States,* 760 A.2d 1034, 1035 (D.C.2000). That is so, certainly, where each underlying act stemmed from a "fresh impulse," in the sense that "'the defendant can be said to have realized that he has come to a fork in the road, and nevertheless decides to invade a different interest.'" *Id.* at 1037 (quoting *Spain v. United States,* 665 A.2d 658, 660 (D.C.1995)) (further citations omitted). In this case, although in quick succession, appellant demanded money from Maldonado and, while struggling to seize money from him, struck him in the face with the gun; next turned to Reyes and (instead of leaving the restaurant) demanded money from him at gunpoint and, unsatisfied with the response, struck him in the forehead; and then again (instead of leaving) saw Ramos trying to move away from him and shot him in the stomach. Unlike in *Nixon, supra,* this was not "a 'single violent act' with 'simultaneous' action," *Stevenson,* 760 A.2d at 1036 (quoting *Nixon);* at each stage of the assaults appellant presumptively was able to desist from violence against another victim, but chose not to do so. Thus, "his successive intentions ma[d]e him subject to cumulative punishment, and he must be treated as [having] accept[ed] that risk, whether he in fact [knew] of it or not." *Spain,* 665 A.2d at 660 (citation omitted). Because the successive voluntary acts of possession did not merge,[2] the judge did not err in rejecting the claim of multiplicity.[3]

Appellant's remaining argument, a variant of the former one, is that the judge's repeated mention of the multiple PFCV charges and underlying "dangerous or violent crimes" compounded the prejudice or confused the jury. But since the judge properly submitted the several PFCV charges to the jury, the prejudice appellant complains of is not cognizable, and the judge's instructions—combined with a clear and comprehensible verdict form—ameliorated any confusion the jury otherwise might have suffered from considering the sizeable number of PFCV and predicate offenses.

*Affirmed.*

---

1. Indeed, there is a genuine question whether a trial judge can intelligently resolve before trial a multiplicity claim directed to separate PFCV charges, because, as our subsequent analysis demonstrates, the question depends on the "separateness" of the predicate crimes of violence—something on which the judge will have heard no evidence at that time. We do not pursue that question here, nor do we opine on the proper remedy—reversal of all convictions or simply vacatur of the multiplicitous convictions and sentences—if a court later determines that there was a "risk that the jury was prejudiced by the prosecutor's overly ambitious charging decision." *United States v. Lilly,* 983 F.2d 300, 305 (1st Cir. 1992).

2. "Each time the defendant commits an independent violent crime, a separate decision is made ... to possess the firearm during that crime." *Hanna v. United States,* 666 A.2d 845, 855 n. 12 (D.C.1995).

3. That the government moved at sentencing, and the judge agreed, to vacate all but one PFCV conviction has no bearing on whether the judge legally was compelled to do so, or abused his discretion in denying the pretrial motion to dismiss all but one of the PFCV counts.